UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

L.W. MATTESON, INC.,

                Plaintiff,                10-CV-0168S(Sr)

v.

SEVENSON ENVIRONMENTAL
SERVICES, INC.,

                Defendant.

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #100.

Currently before the Court is plaintiff L.W. Matteson, Inc.'s ("Matteson's"), first motion *in limine* seeking to preclude evidence or argument not directly relevant to a determination of the number of 100% pay time hours. Dkt. #108. Specifically, Matteson seeks to preculde evidence or argument that:

1. Matteson failed to perform levels of production promised to defendant Sevenson Environmental Services, Inc. ("Sevenson"), as required under the terms of the Purchase Order and Principal Contract;

2. Matteson failed to provide a sufficient number of skilled workers, and failed to provide equipment in good working order to perform the dredging work;

3. Matteson defaulted in its performance of the Purchase Order;

4. As a result of Matteson's default, Sevenson was required to provide its own equipment and personnel to perform the work which Matteson agreed to perform;

5. Matteson warranted to Sevenson that Matteson would be able to excavate an average rate of 12,000 in situ cubic yards per day of fly ash;

6. Matteson breached the warranty of performance which it made to Sevenson, causing Sevenson to incur an additional $4,100,000 to perform work which Matteson had agreed to perform;

7. Sevenson is entitled to a set-off in the amount of $4,100,000 against any monies it may owe to Matteson;

8. Sevenson representatives conferred extensively with a representative of Matteson in order to submit a proposal to the Tennessee Valley Authority ("TVA");

9. Matteson represented to Sevenson that Matteson's dredging equipment was capable of removing fly ash from the Emory River at an average daily rate of 12,000 - 20,0000 in situ cubic yards, and that such equipment was in sufficient condition to perform such ash removal;

10. Sevenson relied upon representations by Matteson in submitting a proposal to the TVA in which Sevenson identified Matteson as its dredging subcontractor and estimated its average daily rate of ash removal to be 12,500 in situ cubic yards;

11. The principal contract between Sevenson and the TVA modifies any of the rights or obligations under the purchase order that are relevant to issues in this case;

12. Sevenson terminated Matteson as a result of a default in performance by Matteson;

13. Matteson failed to timely commence dredging operations; failed to provide dredging equipment capable of handling the required output and performance; failed to maintain its equipment in good working order; failed to provide a sufficient number of quality trained employees to perform dredging operations; failed to provide adequately trained

    supervisory personnel; failed to have proper replacement and spare parts on-site for its dredging operations; failed to maintain appropriate levels of production; and failed to take appropriate measures to increase production once Matteson fell behind in production;

14. As a result of Matteson's default in performance and breach of contract, Sevenson was required to mobilize and operate four dredges of its own, including hiring additional personnel, in order to complete Phase I of the project by January 31, 2010;

15. If Matteson had properly performed its work as it represented to Sevenson, Matteson would have completed dredging for Phase I of the project by December 31, 2009;

16. Sevenson incurred approximately $4,100,000 in dredging costs for the project in January 2010, which costs Sevenson would not have incurred had Matteson not defaulted in its performance; and

17. Matteson owes Sevenson $4,100,000.

Dkt. #109. Sevenson does not oppose the motion as to numbers 4, 6, 7, 11, 12, 14, 16 and 17. Dkt. #116. Accordingly, the motion *in limine* is granted with respect to these items.

  Although conceding that Sevenson cannot claim that Matteson breached the purchase order by failing to achieve production minimums, Sevenson argues that it is entitled to present evidence of its belief that the purchase order was production based because otherwise, the trier of fact would be compelled to award interest pursuant to New York's Prompt Payment Claim. Dkt. #116, p.17. Sevenson also seeks to proffer evidence of its belief that the purchase order was production based so as to explain how it determined its payment to Matteson. Dkt. #116, p.18.

Matteson replies that allowing such testimony will render meaningless the efficiencies and judicial economy achieved by summary judgment.  Dkt. #133.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp.2d 161, 164 (S.D.N.Y. 2006).  "Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context*." Scott v. City of New York,* 591 F. Supp.2d 554, 557 (S.D.N.Y. 2008).

As determined in Judge Skretny's summary judgment decision and this Court's decision with respect to Matteson's 56(g) motion, Sevenson's "belief that the purchase order was production based" is irrelevant to the issues remaining in this matter, *to wit*, the accuracy of the 100% and 70% hours billed.  Accordingly, Matteson's motion in limine is granted with respect to numbers 1, 5, 8, 9, 10 and those elements of 13 relating to commencement of operations, provision of equipment capable of handling required output, and appropriate levels of production.  However, the contract requires

equipment, personnel and supervision as required for a typical dredging operation and it cannot be said that evidence regarding lack of manpower or sufficiently trained employees or improperly maintained equipment may not be relevant to the number of hours billed, particularly with respect to the 70% pay time.  Thus, the motion is denied with respect to numbers 2, 3 and 15, as well as number 13 insofar as it relates to evidence regarding maintenance of equipment, number of quality trained employees, adequately trained supervisory personnel, and availability of replacement parts.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **May 23, 2013**

                                             *s/ H. Kenneth Schroeder, Jr.*
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**