UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

L.W. MATTESON, INC.,

                             **Plaintiff,**                    10-CV-0168S(Sr)

v.

**SEVENSON ENVIRONMENTAL**
**SERVICES, INC.,**

                             **Defendant.**

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #100.

Currently before the Court is plaintiff L.W. Matteson, Inc.'s ("Matteson's"), second and third motions *in limine* seeking to preclude evidence or argument relating to the WinOPS data. Dkt. ##113 & 118. Specifically, Matteson argues that defendant Sevenson Environmental Services, Inc. ("Sevenson"), should not be permitted to utilize an expert witness to opine that eight days of raw data obtained from a density meter on one of Matteson's dredges and collected by WinOPS software demonstrates that Matteson had not accurately recorded its 100% pay time because the expert's opinion was not properly disclosed during discovery and was only proffered in opposition to

-1-

Matteson's motion for summary judgment.  Dkt. #115.  In addition, Matteson argues that the WinOPS data was gathered from an instrument which was not functioning properly and had not been calibrated and that the WinOPS data was reviewed by an individual lacking experience with the software, rendering any opinion derived from it lacking in foundation, reliability and relevance.  Dkt. #115.  Furthermore, Matteson argues that Sevenson failed to dispute the accuracy of Matteson's recording of 100% pay time in their Answer or Amended Answer and that representatives of Sevenson have admitted the accuracy of Matteson's recording of dredging hours during depositions and should not be permitted to introduce evidence to controvert the admissions of their corporate representatives.  Dkt. #115.  Finally, Matteson argues that there is no basis to extrapolate the eight days of information available to the entirety of Matteson's 167 days of performance, especially given that subsequent to the collection of WinOPS data at issue, Matteson altered it's operations to improve productivity as requested by Sevenson and substituted another dredge for the one in use at the time the WinOPS data at issue was collected.  Dkt. #119.

Sevenson opposes the motions on the ground that the WinOPS data is the only objective means to verify the accuracy of Matteson's hand-written dredge logs.  Dkt. #127.  Specifically, Sevenson argues that the WinOPS data includes slurry density and that a reading of more than 1.0 would inform the jury that material was moving through the dredge pipe.  Dkt. #127.  Moreover, Sevenson argues that the WinOPS data is not so complex as to require expert testimony and that Timothy Donegan, P.E., should be permitted to testify as a fact witness regarding the WinOPS data.  Dkt. #127.

Specifically, Sevenson argues that Mr. Donegan should be permitted to testify, as a lay witness, that the WinOPS logs for the period from 7:00 p.m. on August 25 to 7:00 p.m. on September 1, 2009 "indicate that material was moving through the line for 79.3 hours" and contradict Matteson's logs, which bill 114.25 hours.  Dkt. #127, p.5.  Sevenson also argues that Matteson falsely represented that it gave the WinOPS data to Sevenson on a daily basis and that, if the jury finds this representation false, it should be permitted to infer that the eight days of WinOPS data is representative of the entirety of Matteson's dredging operations.  Dkt. #129, p.5.

By Decision and Order entered September 24, 2012, the Court denied Sevenson's motion for leave to supplement Mr. Donegan's expert report to permit him to opine that data from the WinOPS computer software program indicated that Matteson was charging Sevenson for time that the pump was running but material was not being dredged.  Dkt. #87.

> Rule 701 of the Federal Rules of Evidence provides that
>
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Advisory Committee Notes on the 2000 amendments to this rule explain that

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.  Under the amendment, a witness' testimony must be scrutinized under the rule regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson.

Mr. Donegan's opinion that the WinOPS data establishes that material was moving through the line for 79.3 hours rather than the 114.25 hours that Matteson charged is not based on Mr. Matteson's perception of the dredging operations during his visit to the site, but upon his subsequent analysis of the WinOPS data.  This analysis required Mr. Donegan to apply his scientific, technical and specialized knowledge to the data.  Specifically, Mr. Donegan utilized the WinOPS operator manual to determine the fields in which information was recorded, transferred the data contained in the ASCII file into an Excel spreadsheet, eliminated hours where the velocity field read zero and then, based upon his knowledge of the specific gravity of water, eliminated hours where the density field was 1.0 to reach his conclusion that Matteson was only pumping material for 79.3 hours.  Mr. Donegan then calculated that the 79.3 hours equated to approximately 53% of the time the pump was operating.  Such analysis clearly falls within the scope of Rule 702.

Allowing Mr. Donegan's opinion as to the accuracy of Matteson's invoices based upon his analysis of the WinOPS data pursuant to Rule 701 would circumvent

the gatekeeping role set forth in Rule 702.  Most critically, there are serious questions regarding the accuracy of the data collected by WinOPS, *to wit*, whether the density meter was properly calibrated and whether Mr. Donegan's exclusion of hours where the density field was 1.0 was appropriate given evidence that WinOPS rounded to a single decimal, while fly ash density ranged from 1.001 to 1.3.  Having failed in it's motion to supplement the expert reports to include Mr. Donegan's opinion as to the accuracy of Matteson's dredging logs based upon analysis of the WinOPS data, Sevenson will not be allowed to present such evidence as opinion evidence by lay witnesses.  Accordingly, Matteson's second and third motions *in limine,* seeking to preclude evidence or argument relating to the WinOPS data (Dkt. ##113 & 118), are granted.


       **SO ORDERED.**

**DATED:**    **Buffalo, New York**
                **May 23, 2013**

                                              *s/ H. Kenneth Schroeder, Jr.*
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**