**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**L.W. MATTESON, INC.,**

                            **Plaintiff,**                      10-CV-0168S(Sr)

v.

**SEVENSON ENVIRONMENTAL**
**SERVICES, INC.,**

                            **Defendant.**

---

### **DECISION AND ORDER**

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #100.

Currently before the Court is plaintiff L.W. Matteson, Inc.'s ("Matteson's"), fourth motion *in limine* seeking to exclude evidence or argument from defendant Sevenson Environmental Services, Inc.'s ("Sevenson's"), expert witnesses, Timothy Harrington, P.E. and Michael Pisani, P.E. on the ground that their original expert disclosure relates solely to issues of productivity, which are not relevant to the issues remaining in this matter following the Court's summary judgment decision, and to exclude evidence or argument from Sevenson's expert witness, Timothy Donegan, P.E., concerning productivity. Dkt. #122. Matteson also seeks to exclude evidence or

-1-

testimony contained in the experts' supplemental expert reports in accordance with this Court's Decision and Order (Dkt. #87), denying Sevenson's motion to supplement their expert disclosure. Dkt. #122.

Sevenson responds that it does not intend to call Michael Pisani, P.E. at trial and agrees that the denial of its request to supplement its original expert witness reports precludes reference by its expert witnesses of information which was not contained in their original reports. Dkt. #129. With respect to Mr. Donegan, Sevenson states that it will not offer testimony that most rental contracts have a minimal production rate clause. Dkt. #129. With respect to Mr. Harrington, Sevenson states that it will not offer testimony regarding the crack in the hull of the dredge. Dkt. #129, p.14. However, Sevenson argues that testimony from Mr. Donegan and Mr. Harrington, consistent with their original expert reports, "will assist the jury in understanding the scientific methodologies employed in dredging, and is relevant to the primary disputed fact of the case - that Matteson was not pumping material during . . . all times in which it billed Sevenson at the 100% rate." Dkt. #129, pp.12-13.

Mr. Donegan's expert report sets forth the following opinions:

1. Matteson should have considered an employee monitoring outflow at the rim ditch when the density meter was not operating properly during dredging.

2. Matteson's production decreased as a result of a problem with the operation of the port spud on the Little Rock dredge.

3. Over a 15-day period from 8/17/09 through 8/31/09,

>        the Little Rock dredge averaged approximately 5,650
>        cubic yards of daily production of fly ash on 11 days
>        of production. The Little Rock had no production on
>        the remaining four days. The basis of this opinion is
>        an inspection and review of data from WinOPS
>        software program aboard the Little Rock on
>        September 1 and 2, 2009. WinOPS is a dredging
>        software that is used for providing positional
>        information, data logging of dredging operations. The
>        WinOPS position (using a global positioning system)
>        output was overlaid with the hydrographic survey
>        performed by Sevenson (before dredge and after
>        dredge) to determine where the dredge was on a
>        particular day and how many cubic yards were
>        removed that day.
>
>     4. Review of the WinOPS data logged during the period
>        of 8/26/09 to 9/2/09 during my site visit on September
>        1 and 2, 2009 indicates that the density meter on the
>        Little Rock was either not working or the dredge was
>        pumping clean water. The WinOPS system logged
>        position and density of the slurry in the pipeline. If the
>        software had logged a "1" then the material in the
>        pipeline is just water. If the output from the density
>        meter is greater than 1, then it is pumping water.[1]

Dkt. #79-2, p.2.

Sevenson argues that Mr. Donegan's opinion that Matteson should place an employee at the rim ditch to monitor outflow goes to Matteson's capacity to determine whether the pump was moving material rather than water when it was billing

---

[1] The Court refers the parties to its Decision and Orders precluding Mr. Donegan from opining that the WinOPS data collected from the density meter during this time period demonstrates that Matteson had not accurately recorded its 100% pay time. Dkt. ##87 & 141. However, Mr. Donegan's timely disclosed opinion, based upon his review of data and observations during the course of his site visit, that the density meter was either not working or the dredge was pumping clean water, cannot be deemed clearly inadmisible on all potential grounds and is better addressed during the course of the trial.

100% time. Dkt. #129, p.13. Sevenson also argues that Donegan's opinion that Matteson's production decreased as a result of a problem with the operation of the port spud goes to whether Matteson spent more time than necessary repositioning the dredge, thereby inflating the amount of 70% pay time. Dkt. #129, p.13. Finally, Sevenson argues that Mr. Donegan's opinion regarding the average cubic yards of daily production and the density meter recording disputes Matteson's claim that it was moving material through the dredge pipe for the amount of time claimed in the dredge logs because if Matteson was moving material through the pipe, productivity would have been higher than the daily average. Dkt. #129, p.14.

Matteson replies that there is no evidence that Sevenson ever requested that Matteson place an employee at the rim ditch or that any such employee could have visually detected fly ash with a density of as little as 1.001 and notes that Sevenson placed one of its own employees at the rim ditch. Dkt. #138, pp.2-3. Matteson also replies that the contract did not limit the amount of 70% pay time and that Sevenson's remedy for displeasure with Matteson's efficiency was to terminate the contract. Dkt. #138, pp.3-4. Matteson replies that Mr. Donegan's opinion as to the amount of material dredged is irrelevant and that his opinion regarding the density meter undermines Sevenson's contention that the density meter was working properly and that WinOPS was properly recording data from the density meter. Dkt. #138, p.4.

Mr. Harrington's expert report sets forth the following opinions:

1. The unusable condition of the port spud on the Little Rock dredge negatively impacted dredging production on this project.

> 2. The step times of the Little Rock dredge were unusually long, resulting in a loss of production time on this project.
>
> 3. The anchor re-positioning time on the Little Rock was unusually long resulting in a loss of production on the project.
>
> 4. The Little Rock dredge positioned its cutterhead too deep at times, resulting in a loss of production on this project.
>
> 5. The speed on the cutterhead may have been too slow for the advance rate, resulting in loss of production on this project.

Dkt. #79-2, p.6.

Sevenson argues that his opinions regarding the port spud, the step times (relocating the dredge) and anchor repositioning time are relevant to Matteson's entitlement to the 70% pay rate. Dkt. #129, pp.14-15. Moreover, Mr. Harrington's observation that the cutterhead was positioned too deep at times, thereby preventing the pumping of material, despite the fact that the pump was engaged, and the speed of operation on the cutterhead may have been to slow for the dredge's advance rate, thereby preventing the capture of the fly ash slurry, is relevant to whether the dredge was pumping material as required to justify 100% pay time hours. Dkt. #129, p.15.

Matteson replies that each of Mr. Harrington's opinions relate solely to the rejected claim that Matteson failed to meet its 12,000 cubic yard per day production requirement because of alleged problems with its dredge or its dredging technique. Dkt. #138, p.5. Matteson notes that the contract requires Sevenson to pay Matteson

when it is repositioning a dredge, regardless of how long it takes or how efficient Matteson is in the process. Dkt. #138, p.5. Matteson also notes that it has a financial incentive to minimize the time repositioning the dredge because the more time it takes on this function, the less opportunity it has to earn 100% pay time for dredging material." Dkt. #138, p.5.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp.2d 161, 164 (S.D.N.Y. 2006). "Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *Scott v. City of New York,* 591 F. Supp.2d 554, 557 (S.D.N.Y. 2008).

Although it is obvious that the expert opinions at issue were originally proffered in support of Sevenson's theory that Matteson was not meeting production requirements – a theory that is no longer a viable defense to this action – it cannot be said that these opinions, and the facts upon which they are based, may not be relevant

to the issue of whether Matteson accurately recorded 100% pay time, *to wit*, is there evidence that Matteson was charging 100% pay time when the dredge was pumping water as opposed to fly ash, and whether Matteson's recording of 70% pay time was inflated due to, *e.g.*, lack of manpower or sufficiently trained employees or improperly maintained equipment. Accordingly, Matteson's fourth motion *in limine* is denied.

       **SO ORDERED.**

**DATED:**     **Buffalo, New York**
             **May 23, 2013**

                                       *s/ H. Kenneth Schroeder, Jr.*
                                       **H. KENNETH SCHROEDER, JR.**
                                       **United States Magistrate Judge**